## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 15 |
| SouthRock Capital Ltda., *et al.*, | Case No. 24-90398 (CML) |
| Debtors in a Foreign Proceeding.[1] | (Jointly Administered) |

### THE ATIVOS FUNDS' SUPPLEMENTAL BRIEF IN SUPPORT OF LIMITED OBJECTION TO EMERGENCY MOTION OF FOREIGN REPRESENTATIVE

Ativos Especiais II - Fundo de Investimento em Direitos Creditórios - NP and Ativos Especiais III - Fundo de Investimento em Direitos Creditórios (the "Ativos Funds") file this supplemental brief in support of their *Limited Objection to Emergency Motion of Foreign Representative for Provisional Relief* [Docket No. 18] (the "Objection"), in order to address the Supreme Court's recent decision in *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024) and to address other legal deficiencies with the Foreign Representative's Motion (defined below). In support of this supplement, the Ativos Funds represent as follows:

### Preliminary Statement

1.    The Foreign Representative originally sought a stay of U.S. litigation against Kenneth Pope only pending the recognition of this chapter 15 proceeding. *See* Docket No. 10 (the "Motion"). Given that the Foreign Representative sought that relief on an "emergency" basis, the Ativos Funds filed their Objection less than 48 hours later. Docket No. 18. In that brief, the Ativos

---

[1] The Debtors in these chapter 15 cases, along with the last four digits of each debtor's Brazilian tax identification number, are as follows: (a) SouthRock Capital Ltda. (01-35); (b) Americana Franquia S.A. (01-51); (c) Brazil Airport Restaurantes S.A. (01-73); (d) HB Participações S.A. (01-57); (e) SRC 5 Participações Ltda. (01-02); (f) SRC 6 Participações Ltda. (01-41); (g) SRC Holding Participações S.A.(01-74); (h) SR N Participações S.A. (01-01); (i) Star Participações S.A. (01-09); (j) Starbucks Brasil Comércio de Cafés Ltda. (01-00); (k) SW do Brasil Ltda. (01-20); (l) SW Stores do Brasil Ltda. (01-36); and (m) Wahalla Ltda. (01-10).  The Debtors' mailing and service address is Avenida Paulista, 1294, 14º andar, sala 14, Bela Vista, São Paulo/SP, CEP 01310-915, Brazil.

Funds explained why the relief sought by the Foreign Representative cannot be granted. *Id.* Among other issues, a stay as to a non-debtor like Pope is not necessary to protect the debtor's assets, as chapter 15 requires, *id.* at 4-6; Pope has not been distracted by the U.S. litigation, since he has ignored that litigation, *id.* at 6; Brazilian law does not support the requested stay, *id.* at 7; the Foreign Representative cannot identify any irreparable harm that supports a stay, *id.*; and the balance of harms overwhelmingly favors allowing U.S. lawsuits against Pope to proceed, *id.* at 8. Each of these reasons remains true today and continues to justify denying the Motion. The Ativos Funds will also show at the August 1 hearing that the Foreign Representative's claims as to Pope cannot be justified on the facts.

2.     However, the Ativos Funds respectfully submit this supplemental brief because four additional legal reasons require denying the Motion. ***First***, under the Supreme Court's recent decision in *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024), the statute that the Foreign Representative invokes – section 1521(a) – cannot justify a stay of litigation against a non-debtor like Pope. ***Second***, *Purdue* and binding Fifth Circuit authority show that section 105(a) cannot justify a stay as to Pope, either. ***Third***, now that the Brazilian proceeding has been recognized, Docket No. 69, there is no meaningful reason, or end-point, for the stay the Foreign Representative seeks against Pope. And ***fourth***, the Foreign Representative's claim that Pope's purported lack of U.S. assets justifies a stay is wrong on the law.

3.     For all these reasons, as well as those articulated in the original Objection, and for the reasons the Ativos Funds will show at the August 1 hearing, the Motion must be denied.

## I.     *Purdue* Supports Denying the Motion

### A.     *Purdue* Limits Section 1521 Relief to Debtors

4.     In *Purdue*, the Supreme Court provided guidance on how to interpret portions of title 11 of the United States Code (the "Bankruptcy Code") that empower bankruptcy courts to

grant relief to debtors. The Supreme Court held that bankruptcy courts lack authority to grant nonconsensual releases to non-debtor third parties as part of a chapter 11 plan. 144 S. Ct. at 2088. This holding teaches that Bankruptcy Code provisions like section 1521(a) that, on their face, allow relief only to "debtors" should not be read to permit relief to non-debtors, absent some clear indication in the text of the statute that such relief is permissible.

5. The Bankruptcy Code provision at issue in *Purdue* was section 1123(b), which describes what optional provisions a chapter 11 plan may include. 11 U.S.C. § 1123(b). The first five clauses of that statute all describe relief that a court may grant to address claims and property belonging to the debtor's estate. 11 U.S.C. § 1123(b)(1)-(5); *Purdue*, 144 S. Ct. at 2081-82. The last clause of the statute also allows a plan to "include any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6); *Purdue*, 144 S. Ct. at 2082. The question at issue in *Purdue* was whether that catchall grant of authority allowed a plan to include a release of non-debtors' litigation claims without the consent of the releasing parties. 144 S. Ct. at 2082.

6. The Supreme Court held that section 1123(b)(6) does not grant such authority. *Purdue*, 144 S. Ct. at 2083. The Supreme Court found critical that, unlike section 1123(b)(6), other parts of the Bankruptcy Code **did** provide for non-debtor releases, but only in the context of asbestos cases. *Id.* at 2085 (citing 11 U.S.C. § 524(g)(4)(A)(ii)). Under traditional statutory canons of construction, the fact that Congress provided for non-debtor releases in that particular context but not others "made it all the more unlikely that § 1123(b)(6) is best read to afford courts that same authority in **every** context." *Id.* at 2085 (citing *Bittner v. United States*, 598 U.S. 85, 94 (2023) (discussing the "expressio unius" canon)). In other words, the *Purdue* Court refused to

allow debtors to use § 1123(b)(6)'s catch-all clause to end-run the limits the Bankruptcy Code had placed on when third-party releases could be included in a plan.

7.      *Purdue* likewise forbids using section 1521(a)(1)'s nonexclusive grant of authority to avoid the Bankruptcy Code's express limits on when a court may stay litigation in a Chapter 15 case.   That statute permits a bankruptcy court to grant "appropriate relief" to a foreign representative only if "necessary to effectuate the purpose of this chapter **and** to protect the assets of the debtor or the interest of the creditors." 11 U.S.C. § 1521(a) (emphasis added).  As the Ativos Funds' opening brief explained, a stay of creditors' litigation against a **non-debtor** like Pope will not protect the debtor's assets or creditors' interests.  Docket No. 18 ¶¶ 8-9.  Moreover, one of the types of relief that the statute permits to protect the debtor's assets is "staying the commencement or continuation of an individual action or proceeding concerning **the debtor**'s assets, rights, obligations, or liabilities." 11 U.S.C. § 1521(a)(1) (emphasis added).  The fact that Congress specifically provided for stays of **debtor** litigation in chapter 15 proceedings implies that a stay of **non-debtor** litigation is not necessary to protect the debtor's assets under section 1521(a)(1).

8.      *Purdue* gives three other compelling reasons why section 1521 does not permit the stay requested by the Foreign Representative.  **First**, as the Supreme Court explained, catchall phrases in statutes must be "interpreted in light of [their] surrounding context and read to embrace only objects similar in nature to the specific examples proceeding it." 144 S. Ct. at 2082 (quotation omitted) (describing how, for example, a catchall at the end of a list discussing "cars, trucks, motorcycles, and any other vehicles" would cover land vehicles but not submarines); *see Epic Sys. Corp. v. Murphy Oil USA*, 584 U.S. 497, 512 (2018) (describing the "ejusdem generis" canon of construction).  Because the list of plan provisions allowed in section 1123(b)(1)-(5) all concern **the debtor's** rights and responsibilities, the Supreme Court held, the catchall in section 1123(b)(6)

4

could not be read to allow relief to non-debtors such as a nonconsensual discharge. *Purdue*, 144 S. Ct. 2082.

9.      Under *Purdue*, it follows that section 1521 – the portion of the Bankruptcy Code underlying the relief sought by the Foreign Representative invokes to support his stay motion – must be read the same way.[2]  While section 1521 sets out a nonexclusive list of relief that a court can grant, just like section 1123(b)(6), each of the enumerated types of relief listed explicitly refer to the ***debtor***'s rights and obligations:

- Section 1521(a)(1) allows for stays of litigation "concerning ***the debtor***'s assets, rights, obligations, or liabilities."

- Section 1521(a)(2) allows stays of execution "against ***the debtor***'s assets."

- Section 1521(a)(3) allows an order "suspending the right to transfer, encumber, or otherwise dispose of any assets ***of the debtor***."

- Section 1521(a)(4) allows for discovery "concerning ***the debtor***'s assets, affairs, rights, obligations, or liabilities."

- Section 1521(a)(5) allows an order entrusting "all or part of ***the debtor***'s assets" to a person authorized by the court.

- Section 1521(a)(6) allows for "extending relief granted under section 1519," which similarly refers to relief involving "***the debtor***'s assets."  *See* 11 U.S.C. § 1519(a)(1)-(2).

- And Section 1521(a)(7) allows "any additional relief that may be available ***to a trustee***," *i.e.*, to the debtor.  *See* 11 U.S.C. § 1502(6) (defining "trustee").

10.      Like the list of plan provisions in section 1123(b), this list in section 1521 gives context to what types of relief are necessary to protect a debtor's assets or the creditors' assets. Because the enumerated types of relief in section 1521 all concern the ***debtor***'s rights and

---

[2] While the Foreign Representative's motion also initially invoked section 1519, that statute only permits the court to grant interim relief "of a provisional nature" "until the court rules on the petition" for recognition. 11 U.S.C. § 1519(a). Now that the Foreign Representative's petition for recognition has been granted, Docket No. 69, section 1519 no longer applies.

responsibilities, only relief concerning the debtor's rights and responsibilities is necessary to protect a debtor's assets. Tangential relief concerning non-debtors, such as the stay the Foreign Representative seeks for Pope's litigation, is not necessary to protect the debtor's assets. Thus, section 1521(a) does not permit that relief, even if the Foreign Representative believes it might be incidentally helpful for the Brazilian reorganization.

11.      **Second**, like section 1521(a), the clause of section 1123(b) at issue in *Purdue* only allows the court to grant relief if "appropriate." The Supreme Court read that "quintessentially context dependent term" to mean that a plan provision would only be "appropriate" if it were similar to the enumerated plan provisions authorized in section 1123(b)'s other clauses. 144 S. Ct. at 2083. Here, too, relief would be "appropriate" under section 1521 only if it resembles the enumerated types of relief allowed under section 1521's other clauses – that is, relief directly concerning the debtor. Incidental relief for non-debtors is not "appropriate" in that sense.

12.      **Third**, the *Purdue* court rejected arguments that, despite the plain text of section 1123(b)(6), policy reasons justified extending nonconsensual releases to non-debtors. 144 S. Ct. at 2086-87. While the Supreme Court acknowledged that either side of the policy debate for or against such releases "may have their points," "if a policy decision like that is to be made, it is for Congress to make," not the courts. *Id.* at 2087. The same principle applies here. If the Bankruptcy Code's plain text does not permit the Court to grant relief to non-debtors, policy arguments by the Foreign Representative will not save the day. In particular, the Foreign Representative's arguments about "comity," Motion 21-22, are not a basis to extend section 1521 beyond what its plain text will bear.

13.      For all these reasons, section 1521 cannot be read to authorize the relief the Foreign Representative seeks. And while the Supreme Court described its holding as "confin[ed] . . . to

4876-1068-7187

the question presented," that does not limit the application of its principles. The Supreme Court clarified only that it was not addressing incidental topics such as consensual releases, plans that fully satisfy claims against a third-party non-debtor, or whether already-confirmed plans could be unwound. 144 S. Ct. at 2087-88. None of those issues are present here. And the Supreme Court did not suggest that the canons of construction it applied are somehow limited to section 1123. Obviously, they are not. This Court should, therefore, interpret section 1521 in the same way and hold that stays of litigation are limited to the debtors, not to non-debtors like Pope.

      **B.**    ***Purdue* Also Prevents Section 105(a) From Extending Section 1521**

      14.    The Foreign Representative has also invoked section 105(a)'s grant of authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" as a basis for staying Pope's U.S. litigation. Motion 13, 17, 21, 25. But *Purdue* also forecloses using section 105(a) to fill section 1521(a)'s gaps in the way that the Foreign Representative wants.

      15.    Like here, parties in *Purdue* sought to invoke section 105(a) as a surrogate for the gap in authority under section 1123(b) for third-party releases. 144 S. Ct. at 2082 n.2. The Supreme Court rejected that argument, explaining that section 105 "alone cannot justify the imposition of nonconsensual third-party releases because it serves only to carry out authorities expressly conferred elsewhere in the code." *Id.* (internal quotation omitted). Similarly, the Fifth Circuit has held that "[a] § 105 injunction must be consistent with" and "cannot alter" the rest of the Bankruptcy Code. *In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995). If non-debtor stays are not permitted by section 1521 itself – and they are not – section 105(a) cannot fill the gap.

      16.    This reading of section 105(a) also provides critical context for the limited authority the Fifth Circuit has allowed for temporary stays of non-debtor litigation. *See Zale*, 62 F.3d at 760. Contrary to the Foreign Representative's argument, the Fifth Circuit has not permitted such

stays under section 105(a) whenever it would be convenient for, or helpful to, a debtor.  Rather, the Court of Appeals has allowed temporary stays of litigation as to non-debtors only in "unusual circumstances" "1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization."  *Id.* at 761.  In other words, a temporary non-debtor stay is permissible under section 105(a) only where it would directly impair the value of the debtor's assets.

17.     At least in the context of section 1521, section 105(a) cannot be used to stretch non-debtor stays beyond that narrow exception.  Because section 1521(a) only allows relief as to the debtor's rights and obligations, *see* ¶¶ 4-13, *supra*, and because section 105(a) cannot be used to expand section 1521(a) beyond its plain text, section 105(a) does not authorize non-debtor stays unless the litigation to be stayed directly impairs the value of the debtor's estate.  Thus, even if the Foreign Representative's claim that the U.S. litigation is distracting Pope were true (it is not) that distraction, by itself, does not justify staying litigation against him that does not directly affect the estate's finances.

## II.     The Foreign Representative's Failure to Limit the Requested Injunction Supports Denying the Motion

18.     The Foreign Representative's proposed injunction must be denied for another reason:  The Foreign Representative has completely failed to suggest any reasonable end date for that injunction or to explain why a stay of any particular length would be justified.

19.     *Zale* at most allows only ***temporary*** stays against non-debtors.  62 F.3d at 761.  The Foreign Representative, however, has failed to articulate an endpoint to the stay the Motion seeks.  Docket No. 10.  The Foreign Representative's original motion only sought relief under section 1519 pending recognition.  *See id.* at 13-14.  But recognition has now been granted, Docket No. 69,

and the Foreign Representative has not filed any new motion seeking a more extended or lengthier stay under section 1521.

20.     Thus, even assuming that the Foreign Representative has a live motion for which relief could be granted, the Motion fails to identify when the stay against Pope should end, how long the Brazilian proceeding will take, or why a stay must persist until that proceeding concludes. Moreover, this Court has already granted a stay for suits against the Foreign Representative, apparently of indefinite length.  Docket No. 69.  Simply extending that stay to suits against non-debtors would reach far beyond a merely temporary stay in effect and cannot fall even within *Zale*'s broadest reading.  *See In re New Towne Dev., LLC*, 410 B.R. 225, 231 (Bankr. M.D. La. 2009).  Because the Foreign Representative has failed to identify any appropriate scope for a stay against Pope, that stay must be denied.

### III.     Any Non-U.S. Assets Pope May Have Would Support Denying the Motion

21.     Finally, one of the key factual and legal premises for the Foreign Representative's Motion is false.  The Foreign Representative has claimed that staying U.S. litigation will not affect creditors because Pope supposedly "lacks any significant U.S. assets to which any of the U.S. Litigation could attach."  Motion 23.

22.     However, discovery has shown that Pope may have significant assets outside of the United States.  If Pope has non-U.S. assets, then U.S. creditors such as the Ativos Funds can use U.S. enforcement tools to collect on those assets just as they could for U.S. assets.  For example, under the law of New York, where the Ativos Funds' suit against Pope is pending, the Court can order a judgment debtor to turn over money or property in his possession of sufficient value to satisfy the judgment.  N.Y. C.P.L.R. § 5225(a).  Likewise, if any of the judgment debtor's property is in the possession of a third party, that third party, too, can be ordered to turn over that property to a judgment creditor.  *Id.* § 5225(b).  The New York Court of Appeals has expressly held that the

turnover statute can be used to order a judgment debtor within the court's jurisdiction to bring property located outside the jurisdiction – even property located abroad – into New York for collection. *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 536 (N.Y. 2009).

23.     Given this authority, the Foreign Representative's claims that Pope lacks U.S. assets is irrelevant.  If Pope has assets ***anywhere in the world***, those assets can, and should, be used to satisfy his personal creditors.  Pope may not avoid his U.S. debts simply by keeping his assets abroad.  The Court should not reward his attempts to evade his creditors by staying litigation against him.

<u>**Conclusion**</u>

WHEREFORE, for the reasons set forth in the original Objection and herein, the Motion should be denied.

4876-1068-7187

Respectfully submitted this 29th day of July, 2024.

**GRAY REED**

*/s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
    Amber M. Carson
    Texas Bar No. 24075610
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:    (713) 986-7000
Email: jbrookner@grayreed.com
       acarson@grayreed.com

    -and-

**MOLOLAMKEN LLP**
    Justin M. Ellis (admitted *pro hac vice*)
    Lauren F. Dayton (admitted *pro hac vice*)
    Catherine Martinez (admitted *pro hac vice*)
430 Park Avenue
New York, New York 10022
Telephone:    (212) 607-8160
Email: jellis@mololamken.com
       ldayton@mololamken.com
       cmartinez@mololamken.com

*Counsel to Ativos Especiais II - Fundo de*
*Investimento em Direitos Creditórios - NP and*
*Ativos Especiais III - Fundo de Investimento em*
*Direitos Creditórios - NP*

## Certificate of Service

The undersigned hereby certifies that on the 29th day of July 2024, he caused a true and correct copy of the foregoing document to be served via the Court's CM/ECF system.

    */s/ Jason Brookner*
    Jason S. Brookner

11