IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 15 |
| | § | |
| SOUTHROCK CAPITAL Ltda., *et al.*, | § | Case No. 24-90398 |
| | § | |
| Debtors in a Foreign Proceeding. | § | (Jointly Administered) |
| | § | |
| | § | |

**THE IBIUNA CREDITORS' SUPPLEMENTAL OBJECTION, JOINDER, AND RESERVATION OF RIGHTS IN OPPOSITION TO EMERGENCY MOTION OF FOREIGN REPRESENTATIVE FOR PROVISIONAL RELIEF WITH RESPECT TO KENNETH POPE**

Ibiuna Crédito Gestão de Recursos Ltda., Travessia Securitizadora de Créditos Financeiros S.A. and Travessia Securitizadora de Créditos Financeiros XXXII S.A. (collectively, the "Ibiuna Creditors") hereby file this Supplemental Objection, Joinder, and Reservation of Rights (the "Supplemental Objection") supplementing their *Objection, Reservation of Rights, and Joinder* [Docket No. 24] in opposition to the *Emergency Motion of Foreign Representative for Provisional Relief Pursuant to Bankruptcy Code Sections 1519, 1521, 362 and 105* [Docket No. 10] (the "Emergency Motion") filed by the foreign representative (the "Foreign Representative") of SouthRock Capital Ltda. and its affiliated foreign debtors (the "Debtors") in the above captioned chapter 15 cases (collectively, the "Chapter 15 Case"). This Supplemental Objection opposes the Emergency Motion solely as to the provisional relief requested therein with respect to Kenneth Pope ("Pope"). In support of the Supplemental Objection, the Ibiuna Creditors respectfully state as follows:

**BACKGROUND**

1.  Ibiuna Crédito Gestão de Recursos Ltda. is an independent asset management firm

founded in 2010. Ibiuna currently has over 29 billion Brazilian Reais in assets under management.

2. Travessia Securitizadora de Créditos Financeiros S.A. and Travessia Securitizadora de Créditos Financeiros XXXII S.A. is a company specializing in securitization, which connects corporations in need of credit with the proper lenders.

3. In August 2022, Pope was introduced to the Ibiuna Creditors through the Foreign Representative and the Debtor's Chief Financial Officer, Mr. Fabio Rohr. At the time, Pope was looking to raise capital purportedly to continue expanding the Debtors' operations. After multiple meetings between Pope and the Ibiuna Creditors, the Ibiuna Creditors' thorough review of the Debtors' financial statements, and representations by Pope about the extent of his financial assets, Ibiuna Creditors decided to lend R$116 million Brazilian Reais (equivalent to $24 million) to certain of the Debtors (the "Borrowers") through the issuance of two sets of commercial notes. The first note was issued on November 1, 2022 and the second was issued on December 14, 2022 (collectively, the "Notes"). Pope personally guaranteed both Notes.

4. In September 2023, the Borrowers defaulted on both Notes. No payment has been received on either of the Notes since that time. On October 31, 2023, the Debtors filed their Brazilian Judicial Reorganization Proceedings.

5. Since the Borrowers' default on the Notes, Pope, as guarantor thereunder, has represented to the Ibiuna Creditors that he has no unencumbered liquid assets to satisfy his obligations under the guaranties. On November 16, 2023 and December 5, 2023, respectively, the Ibiuna Creditors initiated civil proceedings against the Borrowers, certain of the Debtors, and Pope in Sao Paulo State Court in an attempt to obtain repayment on the Notes (collectively, the "Brazilian Civil Proceedings").

6. On May 3, 2024, the Ibiuna Creditors initiated multiple proceedings in United

States District Court seeking orders pursuant to 28 U.S.C. § 1782 to take discovery of certain third parties to identify potential assets that could satisfy obligations due and owing on the Notes (collectively, the "1782 Proceedings"). Importantly, the Ibiuna Creditors do not seek discovery directly from any of the Debtors or Pope individually as part of the 1782 Proceedings. Instead, to date, the Ibiuna Creditors have sought third-party discovery from American Airlines Group, Inc., Bank of America Corp., Amarillo National Bancorp, Inc., Riata Corporate Group, LLC, The Pope Terry D & Barbara A 2007 Revoc Trust, Goldman Sachs Group, Goldman Sachs, Clearing House Payments Company, LLC, New York Federal Reserve, and Southstone Capital, LLC (collectively, the "1782 Respondents").

7. On June 12, 2024, the Debtors filed their Chapter 15 Petition for Recognition of Foreign Proceeding initiating the instant proceedings. On that date, the Foreign Representative filed his Emergency Motion, seeking the extraordinary imposition of a provisional stay to non-debtor Pope for the pendency of the ch. 15 recognition proceeding because without such a stay, the Foreign Representative alleges that "…*creditors can continue to imperil the Debtors' reorganization in Brazil, hindering the Debtors' efforts to rehabilitate through the Brazilian Insolvency Proceeding by targeting the Group's key officer and driving force behind the restructuring in Brazil…*" as a result of the alleged need for "….*Pope to defend himself (acting pro se) in multiple proceedings pending across the United States ...consum[ing] substantially all of Pope's time and energy, depriving the Debtors of all the managerial resources that their top officer could otherwise provide to the Group during its day-to-day operations and in relation to the restructuring process undergoing in Brazil*." Emergency Motion, ¶ 40.

8. Further, in support of the relief requested by the Foreign Representative for the benefit of Pope, the Foreign Representative filed the Declaration of Kenneth Pope in Support of

3

113015439.2

the Emergency Motion [Docket No. 8] (the "Pope Declaration"). Pursuant to the Pope Declaration, Pope has sworn under penalty of perjury that his only owned assets in the United States consist of (i) a bank account held with UBS with a balance of approximately $21,518.99 ("the UBS Account"); (ii) an account held with Goldman Sachs with a balance of approximately $1,152 (the "GS Account"); (iii) an account with Bank of America holding approximately $675.46 (the "BoA Account"), (iv) 100% of equity of SouthStone Capital LLC ("SouthStone"), which in turn owns 89.999% of the equity of Debtor Southrock Capital LLC ("Southrock, LLC"); and (v) .001% of the equity of Southrock LLC[1]. The Foreign Representative has argued that making a stay under sections 362 and 105 of the Code applicable with respect to the Pope and his property that is within the territorial jurisdiction of the United States for the pendency of the ch. 15 recognition is justified, in part, because the litigation and discovery pending in the U.S. should not be allowed to continue in light of Pope's de minimus assets in the United States.

9.   The relief requested by the Foreign Representative in the Emergency Motion should be denied, because in addition to the arguments set forth in *Banco Votorantim S.A.'s Limited Objection to Emergency Motion of Foreign Representative for Provisional Relief Pursuant to Bankruptcy Code Sections 1519, 1521, 362, and 105* [Docket No. 16]; *Limited Objection and Reservation of Rights of Banco Modal S.A. to the Emergency Motion of Foreign Representative for Provisional Relief Pursuant to Bankruptcy Code Sections 1519, 1521, 362, and 105* [Docket No. 17]; *Ativos Funds' Limited Objection to Emergency Motion of Foreign Representative for Provisional Relief* [Docket No. 18]; and *Ibiuna Creditors' Objection, Reservation of Rights, and Joinder in Opposition to Emergency Motion of Foreign Representative for Provisional Relief Pursuant to Bankruptcy Code Sections 1519, 1521, 362, and 105* [Docket No. 24], and any

---

[1] Thus, Pope directly and indirectly through SouthStone holds 90% of equity of SouthRock.

113015439.2

supplemental objections filed by those creditors, (a) the Foreign Representative cannot meet its burden under Section 1519 of the Bankruptcy Code for the extraordinary relief sought for non-debtor Pope, (b) the instant proceeding is a recognition proceeding of the Brazilian Judicial Reorganization Proceedings, yet the stay sought for Pope in the Emergency Motion far exceeds any relief to which Pope could possibly be entitled pursuant to the Brazilian Judicial Reorganization Proceedings and applicable Brazilian law, and (c) allowing the Ibiuna Creditors to continue with their third party discovery through the 1782 Proceedings should not consume any meaningful amount of Pope's time and/or interfere with his contributions, if any, to (x) the day-to-day operations of the Debtors, and (y) the Debtors' restructuring process undergoing in Brazil.

## SUPPLEMENTAL OBJECTION

**A.    The Foreign Representative Fails its Burden Under Section 1519 of the Bankruptcy Code**

1. Section 1519 of the Bankruptcy Code governs the relief requested by the Foreign Representative here. Section 1519(a) states that the court may grant provisional relief regarding the foreign debtor's assets only "where relief is urgently needed to protect the assets of the debtor or the interests of creditors." The Foreign Representative has failed to demonstrate how provisional relief as to Pope would "protect the assets of the debtor." Pope is not a debtor. Furthermore, this Chapter 15 Case was brought nearly nine months after the Brazilian Judicial Reorganization Proceedings were initiated on behalf of the Debtors. Waiting nine months to ask for the requested relief does not demonstrate urgency. █████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

5

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████

2.      Furthermore, the Foreign Representative cannot meet the injunction standard found in Section 1519(e) of the Bankruptcy Code. Section 1519(e) states that "*the standards, procedures, and limitations applicable to an injunction shall apply*" to a request for provisional relief. Thus, the Foreign Representative must demonstrate his entitlement to an injunction, which requires a showing that: (1) the Foreign Representative is likely to succeed on the merits; (2) absent an injunction, there would be an imminent irreparable harm to the Debtors' assets; (3) the balance of harms weighs in the Foreign Representative's favor; and (4) the public interest weighs in favor of granting an injunction. *See in re Lyondell Chem. Co.* 402 B.R. 571, 588-89 (Bankr. S.D.N.Y. 2009).

3.      The Foreign Representative fails at least three elements of the injunction standard. First, the Foreign Representative has provided nothing but bare bones assertions that the Debtors' estates would be harmed absent the provisional relief requested as to Pope. In considering whether the Debtor would suffer irreparable harm, courts have considered whether the movant has a sufficiently viable alternative remedy at law. *See Janvey v. Alguire,* 628 F.3d 164, 179 (5th Cir. 2010). If Pope desires the protections of the United States Bankruptcy Laws, his alternative remedy would be to file a bankruptcy case of his own in the U.S. The Foreign Representative has not provided any reason why achieving the relief sought is better served by the Emergency Motion rather than a Pope individual bankruptcy case. In a similar context, at least one court found that a non-debtor's failure to exhaust other legal remedies was a key factor in denying an injunction in

6

favor a non-debtor guarantor. *See In re Vitro, S.A.B. de C.V.*, 455 B.R. 571, 581 (Bankr. N.D. Tex. 2011).

4. The Debtors themselves have repeatedly stated that the only assets they possess in the United States are the balance of a retainer payment to their U.S. counsel and contract rights in a franchise agreement. Neither of these assets would be affected at all if the stay is not extended to Pope. It is thus unclear what irreparable harm would befall the Debtors should the Court deny the Motion.

5. Similarly, both the balance of harms and the public interest weighs against extending the stay to Pope. The Foreign Representative continues to argue that the Debtors themselves will be harmed if the stay is not extended to Pope, though it is hard to comprehend how the Ibiuna Creditor's discovery requests to unaffiliated third parties[2] will harm the Debtors' reorganization efforts. In fact, the Foreign Representative presents no argument in the Emergency Motion that the discovery sought as to any of the third-party 1782 Respondents will in any way harm the Debtors and/or Pope relative to the Brazilian Insolvency Proceeding.

6. Conversely, if the Ibiuna Creditors are barred from continuing the 1782 Proceedings, leaving aside the limited and expedited discovery conducted in the instant proceeding – with such discovery limited in its use beyond the instant Chapter 15 Case, the Ibiuna Creditors will be stripped of the right to fully investigate Pope's claims that he has limited assets in the United States. The Ibiuna Creditors should not be made to accept as true, naked assertions that Pope's U.S. assets are minimal. Granting the Foreign Representative's request as to Pope would

---

[2] Of the ten third-parties to whom the Ibiuna Creditors have served discovery within the 1782 Proceedings - American Airlines Group, Inc., Bank of America Corp., Amarillo National Bancorp, Inc., Riata Corporate Group, LLC, The Pope Terry D & Barbara A 2007 Revoc Trust, Goldman Sachs Group, Goldman Sachs, CHIPS, New York Federal Reserve, and Southstone Capital, LLC – only Southstone Capital, LLC represents an entity in which Pope claims an ownership interest.

7

113015439.2

be highly prejudicial to the Ibiuna Creditors' rights.

7. As explained more fully below, the public interest also weighs against granting the requested relief here. Put simply, "[c]hapter 15 focuses on protecting the debtors, not the non-debtor." *In re Vitro,* 455 B.R. at 581. Granting Pope the extraordinary relief sought would result in Pope being granted protections to which he is not eligible in the underlying Brazilian Insolvency Proceeding, which is the proceeding being granted recognition in this Chapter 15 Case. A stay granted by the Bankruptcy Code is a powerful tool that is designed to allow the honest but unfortunate debtor to reorganize in hopes of remaining in business. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Foreign Representative has simply failed to show why such extraordinary relief is warranted here.

**B.    Pope Should not Enjoy Greater Protections than he is Afforded in Brazil**

8. Brazilian Law does not allow individuals to file for bankruptcy protection. *See Lei que regula a recuperacao judicial, a extrajudicial e a falencia do empresario e da sociedade empresaria,* Article 1 (stating that Brazilian Bankruptcy Law extends only to sole traders and corporations). Moreover, pursuant to the Brazilian Superior Tribunal of Justice, Directive No. 581, in a Brazilian insolvency proceeding, *"[t]he judicial reorganization of the main debtor does not prevent the continuation of actions and enforcements filed against third-party debtors who are joint and severally liable or jointly obligated in general, for exchange, real or personal guarantee."* Pope has in fact already been denied the relief the Foreign Representative seeks on his behalf. A Brazilian court specifically declined to extend a stay of enforcement actions as to

---

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

113015439.2

Pope. *See Decisão*, Case No. 1153819-28.2023.8.26.0100.

9.  Extending the stay as to Pope relative to litigation and discovery in the United States and whatever assets he may possess here, would effectively be granting Pope the protections of a bankruptcy court to which he has been denied in Brazil. Chapter 15 is designed to be "*consistent with the application of similar statutes adopted by foreign jurisdictions*", not to expand the protections afforded to foreign debtors or its affiliates. 11 U.S.C. § 1508; see also *In re Ran*, 607 F.3d 1017 (5th Cir. 2010). Cases that have extended the stay to nondebtors in chapter 15 cases, have only done so if the relief sought was either previously granted by, and/or at least an available remedy in the foreign home jurisdiction. *See CT Inv. Management Co., LLC v. Carbonell*, 2012 WL 92359 (Bankr. S.D.N.Y. 2012) (extending the stay to a nondebtor based on a previously-entered order from a Mexican Court granting such a stay extension and the principles of comity). In sum, the overall goals of chapter 15 are "*not furthered by granting an injunction when such an injunction may not…be recognized under [foreign] law.*" *In re Vitro*, 455 B.R. at 582.

10. The Foreign Representative here seeks to expand Pope's rights by shielding him from any potential actions he otherwise would not be protected from pursuant to applicable Brazilian law and the law of the Brazilian Insolvency Proceeding. Pope presumably has the ability to file a petition for relief under Title 11 of the United States Code here in the United States should he desire the benefits of an automatic stay. Instead, the Foreign Representative here asks this Court to enable a work-around by seeking blanket protection for Pope, without the need to subject himself to the burdens and obligations associated with filing for bankruptcy protection himself. He has not chosen to avail himself of that option, and should not otherwise be afforded the benefits of a Section 105 stay.

11. Even if Pope could enjoy bankruptcy stay/injunction protections in Brazil, under

113015439.2

U.S. law, extending the stay to a director or officer of the debtor can only be granted after a debtor meets or surpasses a very high bar, which cannot be met here. For instance, courts have extended the stay to non-debtor third parties where "there is such identity between the debtor and the third-party defendant that.. a judgment against the third party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Services, Inc. v. Enron Canada Corp.,* 349 F.3d 816, 824 (5th Cir. 2003)(citing *In re A.H. Robins Co., Inc.,* 63 B.R. 986 (Bankr. E.D. Va. 1986). This principle is certainly not applicable in the context of the Ibiuna Creditors' discovery requests to third parties.

12. Courts may also provide such "extraordinary relief" where there exists "unusual circumstances" and requires demonstrating "something more than the mere fact that one of the parties to the lawsuit has filed [a bankruptcy proceeding]." *In re Divine Ripe, LLC,* 538 B.R. 300 (Bankr. S.D. Tex. 2015)(citing *Reliant Energy Services, Inc.,* 349 F.3d at 825). The Foreign Representative has not provided any facts to show that "unusual circumstances" are present in this case. In fact, given the Debtors' minimal assets in the United States, it appears that the Debtors' primary motive in filing the Chapter 15 Case was an attempt to gain an individual stay as to Pope – where no such relief is available in the Brazilian Insolvency Proceeding. There is no apparent nexus between the relief requested as to Pope and any alleged impediment to the Debtors' reorganization[4].

**C.  Allowing the Ibiuna Creditors to Proceed with Third Party Discovery will not Hinder the Chapter 15 Proceeding or the Brazilian Reorganization Effort**

13. In the short term, through the existing 1782 Proceedings, the Ibiuna Creditors seek

---

[4] As stated above, with regard to the Ibiuna Creditors, the process which the Foreign Representative seeks to provisionally enjoin is third-party discovery, which in no event should divert Pope's time away from the Brazilian Insolvency Proceedings, even assuming Popes' attention was integral to such proceeding.

113015439.2

to continue discovery on non-Debtor parties. Further, to date, the discovery in the 1782 Proceedings has only sought discovery from the 1782 Respondents, not from Pope directly.

14. The Foreign Representative argues that allowing any proceedings in the United States to continue would "consume substantially all of Pope's time and energy." Emergency Motion, ¶ 40. It is not conceivable that Pope's time and energy will be necessary for the discovery sought by the Ibiuna Creditors here[5]. The discovery sought in the 1782 Proceedings is sought from third-parties, and therefore do not require Pope's involvement. There is no risk of exhausting Pope's time or energy in relation to the 1782 Proceedings.

## JOINDER

15. The Ibiuna Creditors join in the responsive pleadings and objections to the Emergency Motion (and the arguments and authorities therein) filed by other similarly situated creditors, to the extent not inconsistent with the Ibiuna Creditors' *Objection, Reservation of Rights, and Joinder* [Docket No. 24] and this Supplement thereto, including (but not limited to) the following:

- *Banco Votorantim S.A.'s Limited Objection to Emergency Motion of Foreign Representative for Provisional Relief Pursuant to Bankruptcy Code Sections 1519, 1521, 362, and 105* [Docket No. 16];

- *Limited Objection and Reservation of Rights of Banco Modal S.A. to the Emergency Motion of Foreign Representative for Provisional Relief Pursuant to Bankruptcy Code Sections 1519, 1521, 362, and 105* [Docket No. 17];

- *Ativos Funds' Limited Objection to Emergency Motion of Foreign*

---

[5] One of the ten third-parties from whom discovery is sought in the 1782 Proceeding is Southstone Capital, LLC. Although Pope owns 100% of the equity of Southstone Capital, LLC the time required for him to respond to the discovery propounded upon that entity pursuant to the 1782 Proceeding should not materially interfere with Pope's attention to the Brazilian Insolvency Proceedings, even if his attention is needed in those proceedings.

*Representative for Provisional Relief* [Docket No. 18];

- *Banco Votorantim S.A.'s Supplement to Limited Objection and Notice of Intent to Raise an Issue of Foreign Law* [Docket No. 88];

- *The Ativos Funds' Supplemental Brief In Support of Limited Objection to Emergency Motion of Foreign Representative* [Docket No. 89];

- Any additional supplemental objections filed by Banco Votorantim S.A., Banco Modal, S.A., and/or the Ativos Funds.

### RESERVATION OF RIGHTS

16. The Ibiuna Creditors specifically reserve their rights to further object to any other relief sought by the Foreign Representative or the Debtors in connection with the Emergency Motion.

### CONCLUSION

The Ibiuna Creditors respectfully request that the Court (1) deny the Foreign Representative's request for provisional relief solely with respect to an extension of the stay to Pope and assets he owns in his individual capacity; (2) allow the Ibiuna Creditors to proceed with its discovery as sought in the 1782 Proceedings; and (3) grant such other and further relief as is just and proper.

Dated: July 29, 2024

/s/ *Michael S. Held*

**JACKSON WALKER LLP**
Michael S. Held (State Bar No. 09388150)
Aaron E. Lozano (State Bar No. 24125803)
2323 Ross Avenue, Suite 600

113015439.2

Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 (Fax)
mheld@jw.com
alozano@jw.com

-and-

Matthew D. Cavenaugh (State Bar No. 24062656)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 (Fax)
mcavenaugh@jw.com

*Counsel to the Ibiuna Creditors*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the July 29, 2024, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof.

                                      */s/ Michael S. Held*
                                      Michael S. Held

113015439.2