**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 15 |
| | § | |
| SouthRock Capital Ltda., *et al.*,[1] | § | Case No. 24-90398 (CML) |
| | § | |
| Debtors in Foreign Proceeding. | § | (Jointly Administered) |
| | § | |

**BANCO MODAL S.A.'S SUPPLEMENTAL OBJECTION**
**TO THE FOREIGN REPRESENTATIVE'S REQUEST TO EXTEND**
**THE AUTOMATIC STAY OR GRANT OTHER INJUNCTIVE RELIEF**
<u>**FOR THE BENEFIT OF A NONDEBTOR**</u>

Banco Modal S.A. ("<u>Banco Modal</u>"), by and through its undersigned counsel, hereby files this *Supplemental Objection* (the "<u>Objection</u>") to the request of the foreign representative (the "<u>Foreign Representative</u>") of SouthRock Capital Ltda. and its affiliated foreign debtors (the "<u>Debtors</u>") in the above captioned chapter 15 cases (the "<u>Chapter 15 Cases</u>"), to extend the automatic stay under section 362 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") or grant other injunctive relief for the benefit of Kenneth Steven Pope ("<u>Pope</u>") and his property in the United States.  In support of the Objection, Banco Modal respectfully states as follows:

<u>**PRELIMINARY STATEMENT**</u>

The Court has entered an order recognizing the Brazilian proceeding of the Debtors.  As a consequence, the automatic stay is now applicable to the Debtors and their property within the U.S.  The Foreign Representative now seeks to extend the protections of the automatic stay to Pope

---

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's Brazilian tax identification number, are as follows: (a) SouthRock Capital Ltda. (01-35); (b) Americana Franquia S.A. (01-51); (c) Brazil Airport Restaurantes S.A. (01-73); (d) HB Participações S.A. (01-57); (e) SRC 5 Participações Ltda. (01-02); (f) SRC 6 Participações Ltda. (01-41); (g) SRC Holding Participações S.A.(01-74); (h) SR N Participações S.A. (01-01); (i) Star Participações S.A. (01-09); (j) Starbucks Brasil Comércio de Cafés Ltda. (01-00); (k) SW do Brasil Ltda. (01-20); (l) SW Stores do Brasil Ltda. (01-36); and (m) Wahalla Ltda. (01-10). The Debtors' mailing and service address is Avenida Paulista, 1294, 14º andar, sala 14, Bela Vista, São Paulo/SP, CEP 01310-915, Brazil.

1

and his assets. However, in light of the United States Supreme Court's ruling in *Harrington v. Purdue Pharma L.P.*, 144 S.Ct. 2071 (2024), Banco Modal submits that this Court does not have the authority to extend the automatic stay to protect a nondebtor, like Pope, under the Bankruptcy Code. Moreover, even assuming *arguendo* that this Court has such authority, the Foreign Representative has failed to satisfy his burden to support an extension of the automatic stay.

Banco Modal does not dispute this Court's authority under Chapter 15 to issue and/or enforce a nonconsensual third party injunction under the appropriate circumstances. However, this is not such a circumstance. In particular, it is well established that U.S. courts may enforce a nonconsensual third-party nondebtor injunction granted by a foreign court under principles of comity. *See*, *e.g.*, *In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010) (enforcing nondebtor release and injunction provisions under principles of comity). However, here, the Foreign Representative, who has acknowledged that the Chapter 15 Cases are "a proceeding to enforce the orders of the Brazilian court," asks this Court to grant relief that he could not obtain in Brazil. Thus, under the current circumstances, this Court should not grant the Foreign Representative's requested relief, which is well beyond the scope of the relief permitted and the purpose of Chapter 15.

## FACTUAL BACKGROUND

### I. Overview of Banco Modal's Relationship to Pope and Debtor Starbucks Brazil

#### A. Starbucks Brazil Defaults on its Note to Banco Modal, Triggering Pope's Obligations Under the Texas Guaranty

30. Banco Modal is a Brazilian investment banking company based in Rio de Janeiro, Brazil. Pope is a United States citizen who owns and operates a number of companies, including Debtor Starbucks Brasil Comércio de Cafés Ltda. ("Starbucks Brazil"), which develops and operates Starbucks coffee shops in Brazil.

31.     On March 9, 2023, Starbucks Brazil executed that certain *Cedula de Credito Bancario,* Bank Credit Note No. 2303090001 (as amended from time to time, including on September 15, 2023, the "Bank Note") under which Starbucks Brazil borrowed R$30 million (or approximately $5.58 million U.S. based on published currency exchange rates as of June 13, 2024) from Banco Modal.  Starbucks Brazil and Pope, as joint makers of the Bank Note, promised to repay the principal amount, interest and additional costs (including charges and penalties in the event of default).

32.     As additional assurance that the Bank Note would be paid, Pope and Banco Modal, contemporaneous with the execution of the Bank Note, entered into a guaranty agreement (the "Texas Guaranty").  Starbucks Brazil is not party to the Texas Guaranty.  Pursuant to the Texas Guaranty, Pope agreed, among other things, to be personally and individually responsible for the timely performance and guaranteed the payment of all of Starbucks Brazil's obligations and liabilities under or arising from the Bank Note (as more particularly described in the Texas Guaranty, the "Guaranteed Debt"), including but not limited to the timely payment of all principal, interest and other charges.[2]

33.     The Texas Guaranty was prepared in the city of Dallas, Dallas County, Texas.  Pope agreed that the Texas Guaranty is intended to be performed and enforced in Texas, that he could be served with process in Texas, and that the laws of Texas-where Pope had represented that he owned and maintained property-shall govern its validity, construction, enforcement and interpretation.[3]

---

[2] True and correct copies of the Bank Note, as executed on March 9, 2023 (and a true and correct English translation of the Bank Note, as executed on March 9, 2023) and the Texas Guaranty are attached hereto as **Exhibit 1**, **Exhibit lA** and **Exhibit 2**, respectively.

[3] *See, e.g.*, Texas Guaranty (Exhibit 2) at §5.03.

34.     On or about October 31, 2023, Starbucks Brazil, along with other affiliated entities owned or controlled by Pope, commenced an insolvency proceeding (a *recuperaçao judicial*) (the "<u>Brazilian Insolvency Proceeding</u>") before the 1st Bankruptcy Court of the Central Forum of São Paulo, Brazil (the "<u>Brazilian Court</u>"). ███████████████████████

████████████████████████████████████████████████████████████

███████████ ████████████████████████████████████████████████.[5]

35.     The filing of the Brazilian Insolvency Proceeding constituted an event of default by Starbucks Brazil under the Bank Note.  As a result, all amounts owing thereunder became immediately due and payable by Starbucks Brazil and Pope, as co-obligors of the Bank Note.

36.     Additionally, upon Banco Modal's demand (which demand was made in accordance with section 5.02 of the Texas Guaranty) all of Pope's obligations under the Texas Guaranty became due, including immediate payment of the Guaranteed Debt.  Despite Banco Modal's demand, Pope failed to timely pay the Guaranteed Debt and thereby committed a material breach of the Texas Guaranty.

**B.     Banco Modal Prevails in its Lawsuit Against Pope for Breach of the Texas Guaranty**

37.     On November 20, 2023, Banco Modal commenced an action against Pope (the "<u>State Court Action</u>") by filing a petition in the District Court of Harris County, Texas, 234th Judicial District (the "<u>State Court</u>"), for breach of contract with respect to the Texas Guaranty.

38.     On June 3, 2024, the State Court awarded Banco Modal a final judgment against

---

[4] ███████████████. Pursuant to the *Second Amended Interim Stipulation and Agreed Confidentiality and Protective Order Regarding Production of Documents* [Dkt. No. 49], a true and correct copy of the transcript of the July 7, 2024 deposition of Fabio David Rohr, the Foreign Representative, marked as **Exhibit 3**, will be submitted to the Court under seal. As provided therein, the Court authorized parties to the stipulation, including Banco Modal, to submit "Designated Material" under seal "without the filing of a separate motion under the Federal Rules, the Bankruptcy Rules, and the Local Rules." *Id*. at ¶ 10.

[5] ██████████████████.

Pope, including an award of $7,798,264.06 in damages.[6]  Pope did not appeal the final judgment

and has sought no protection against enforcement.  As such, Pope's liability to Banco Modal is

final and undisputed.

## II.    The Chapter 15 Cases

39.    On June 12, 2024, the Foreign Representative commenced the Chapter 15 Cases by

filing petitions for relief under chapter 15 of the Bankruptcy Code requesting recognition of the

Brazilian Insolvency Proceeding as a foreign main proceeding.  In connection with the petitions,

the Foreign Representative filed a *Joint Verified Petition for Recognition of Foreign Main*

*Proceedings and Motion for Order Granting Related Relief Pursuant to Bankruptcy Code Sections*

*1515, 1517, 1520 and 1521* [Dkt. No. 9], at 12, 55, 74(g), 101 [Dkt. No. 9] (the "Verified

Petition"), which purports to seek, among other things, post-recognition relief under sections 1507

and 1521 of the Bankruptcy Code.

40.    The Chapter 15 Cases appear to have been filed to protect Pope.  Thus, the Foreign

Representative filed the *Emergency Motion of Foreign Representative for Provisional Relief*

*Pursuant to Bankruptcy Code Sections 1519, 1521, 362 and 105* [Dkt. No. 10] ("Provisional Relief

Motion") requesting, among other things, a stay with respect to Pope and his property within the

territorial jurisdiction of the United States pending recognition.

41.    Several creditors, including Banco Modal, filed objections to the Provisional Relief

Motion.  *See, e.g., Limited Objection and Reservation of Rights of Banco Modal S.A. to the*

*Emergency Motion of Foreign Representative for Provisional Relief Pursuant to Bankruptcy Code*

*Sections 1519, 1521, 362 and 105* [Dkt. No. 17].  Banco Modal contended that a stay enjoining

parties from pursuing Pope and his assets in the U.S. should be denied because it would be

---

[6] A true and correct copy of the State Court's judgment is attached hereto as **Exhibit 4**.

inconsistent with Chapter 15, was not urgently needed to protect the Debtors' assets or creditors' interests, would prejudice Pope's creditors, and did not satisfy the requirements for granting such extraordinary relief. *Id.*

42. Following a hearing on the Provisional Relief Motion, the Court entered the *Stipulation and Order Granting Emergency Motion of Foreign Representative for Provisional Relief Pursuant to Bankruptcy Code Sections 1519, 1521, 362 and 105* [Dkt. No. 17] (the "Stipulation and Order"). The Court did not rule on the Provisional Relief Motion at that time. Instead, the Court requested that Pope and the creditors that objected to the Provisional Relief Motion maintain the status quo with respect to Pope. *See id.* at ¶ 4.

43. On July 15, 2024, the Court entered the *Order Granting Recognition of Foreign Main Proceedings and Discretionary Relief* [Dkt. No. 69] (the "Recognition Order"). The Recognition Order provides that "the provisional relief sought in the [the Provisional Relief Motion] with respect to Pope, and the extension of such relief pursuant to sections 1521(a)(6) and 1521(a)(7) of the Bankruptcy Code pending the approval of the reorganization plan will be considered at a further hearing on the Motion set for August 1, 2024 at 10:00 a.m. (prevailing Central Time)." *Id.* at ¶ 11.

## ARGUMENT

44. Given that the Brazilian Insolvency Proceeding has been recognized, section 1519 is no longer applicable. Moreover, there was no relief granted with respect to Pope under section 1519(a). Thus, the Foreign Representative's request to extend the automatic stay or grant other injunctive relief as to Pope is subject to section 1521(a)(7) and/or section 1507 of the Bankruptcy Code.

45.     The Foreign Representative bears the burden of demonstrating that he is entitled to this relief.  *See, e.g.*, *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1069 (5th Cir. 2012) (affirming bankruptcy court's decision that the foreign representative had failed to carry his burden on behalf of the debtors in showing that a non-consensual discharge of non-debtor guarantors was appropriate under sections 1521 and 1507 of the Bankruptcy Code); *In re PT Bakrie Telecom Tbk*, 628 B.R. 859, 887 (Bankr. S.D.N.Y. 2021) (holding that the foreign representative failed to meet his burden under sections 1521 and 1507 for granting a non-debtor release).

46.     Banco Modal submits that the Foreign Representative is not entitled to such relief under either section.  Thus, this Court should deny the Foreign Representative's request to extend the automatic stay to or grant other injunctive relief for the benefit of Pope.

## I.     The Fifth Circuit's Framework for Considering Post-Recognition Relief

47.     In *Vitro*, the United States Court of Appeals for the Fifth Circuit acknowledged that the relationship between section 1507, which provides for "additional assistance" upon recognition, and section 1521, which provides for "any appropriate relief" under section 1521, "is not entirely clear."  *Vitro*, 701 F.3d 1053-54.  Both sections provide for relief upon recognition, "but under different standards."  *Id.* At 1056.  Thus, the Fifth Circuit adopted the following three-part framework for determining which section and standard would govern specific requests for post-recognition relief.  *Vitro*, 701 F.3d at 1056-58.

48.     First, a court should consider whether the requested relief falls under one of the specific provisions of section 1521(a)(1)-(7) and (b).  *Id.* at 1056 (citing cases in support of the principle that specific terms prevail over the general).  Second, if the requested relief is not specifically listed in section 1521(a)(1)-(7) or (b), the court should next consider whether the relief can be considered "appropriate relief" under section 1521(a), subject to an analysis of former section 304 of the Bankruptcy Code.  *Id.* at 1056-57 ("This latter consideration aligns with

Congress's intent that § 1521 was not intended to 'expand or reduce the scope of relief' previously available under other provisions, including § 304."). "Third, only if the relief requested appears to go beyond the relief previously available under § 304 or currently provided for under United States law, should a court consider § 1507." *Id*. at 1057 (internal citation omitted).

49. In this instance, the extension of the automatic stay or the grant of injunctive relief for the benefit of Pope does not fall within the scope of section 1521(a)(1) through 1521(a)(6) or 1521(b). However, such relief could arguably fall within the scope of section 1521(a)(7) of the Bankruptcy Code, which authorizes this Court to grant any "additional relief" that may be available to a trustee under another chapter of the Bankruptcy Code (subject to certain exceptions not applicable here).[7] If, as Banco Modal submits, section 1521(a)(7) does not authorize the extension of the automatic stay to a nondebtor, then *Vitro* teaches that this Court should consider section 1507. Ultimately, as shown in detail below, the Foreign Representative has failed to demonstrate that he is entitled to the relief requested under section 1521(a)(7) or section 1507 of the Bankruptcy Code.

## II.   Pope is Not Entitled to a Stay Under Section 1521(a)(7)

### A.   Under *Purdue*, this Court Lacks the Authority to Extend The Automatic Stay to a Nondebtor

50. Following the filing of these Chapter 15 Cases and the Provisional Relief Motion, the United States Supreme Court held that bankruptcy courts lack the authority to grant injunctive relief for the benefit of nondebtors that have not tendered substantially all of their assets in

---

[7] In *Vitro,* the Fifth Circuit concluded that section 1521(a) does not authorize a court to grant a nondebtor release because its "precedent has interpreted the Bankruptcy Code to foreclose such a release." *Vitro*, 707 F.3d at 1059. The court, however, did not address the applicability of section 1521(a) to a preliminary injunction in favor of a nondebtor, which were permissible in the Fifth Circuit prior to the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 144 S.Ct. 2071 (2024).

exchange for the Bankruptcy Code's protections.  *See Harrington v. Purdue Pharma L.P.*, 144 S.Ct. 2071 (2024).

51.     In *Purdue*, the Supreme Court addressed "whether a court in bankruptcy may effectively extend to nondebtors the benefits of a Chapter 11 discharge usually reserved for debtors." *Id.* at 2081.  While the Supreme Court was presented with a debtor's request to protect a nondebtor at the end of a Chapter 11 case, there is no reason why its holding and reasoning should not apply to relief requested at the beginning of Chapter 11 case.  Indeed, nothing in the Supreme Court's decision suggests that a court's grant of injunctive relief in favor of a nondebtor is contingent on timing considerations.  Instead, the Supreme Court held that the discharge or stay of direct claims by nondebtors against other nondebtors is not authorized by the Bankruptcy Code, which provides relief to debtors against claims of their creditors against them and their property. *See id.* at 2084 ("[B]ankruptcy courts may have many powers, including the power to address certain collective-action problems when they implicate the debtor's rights and responsibilities.").

52.     The Supreme Court's holding in *Purdue* thus removes any basis for providing injunctive relief to a nondebtor.  If a trustee would not be able to obtain a discharge or an injunction for the benefit of a nondebtor under sections 105(a) or 1123(b)(6) of the Bankruptcy Code, as held by the Supreme Court, then there is no basis for granting the Foreign Representative with similar relief under section 1521(a)(7). *But see In re Parlement Tech., Inc.*, Case No. 24-10755, 2024 WL 3417084, at *1 (Bankr. D. Del. July 15, 2024) ("The Court concludes that *Purdue Pharma* does not preclude the entry of such a preliminary injunction …."); *Coast to Coast Leasing, LLC v. M&T Equipment Finance Corp. (In re Coast to Coast Leasing, LLC),* Case No. 24-03056, 2024 WL 3454805, at *2 (Bankr. N.D. Ill. July 17, 2024) (distinguishing *Purdue* on the basis that the nondebtors were seeking a temporary injunction and not a release).

### B.   Under Principles of Statutory Construction, Section 1521(a)(7) is Limited to Relief Concerning a Debtor

53.     Assuming *arguendo* that *Purdue* does not bar the issuance of a preliminary injunction in favor of a nondebtor under Chapter 11, the Supreme Court's rationale should nevertheless inform this Court's decision making in these Chapter 15 Cases.

54.     In *Purdue*, the plan proponents argued that section 1123(b)(6), a catchall provision following a series of examples, was the source of a court's authority to grant a discharge to a nondebtor.  There, the Supreme Court noted that "[w]hen faced with a catchall phrase like that, courts do not necessarily afford it the broadest possible construction it can bear." *Purdue*, 144 S. Ct. at 2082.  Thus, a catchall provision "must be interpreted in light of its surrounding context and read to 'embrace only objects similar in nature' to the specific examples preceding it." *Id*.  In *Purdue,* the Supreme Court identified an "obvious link" between the enumerated provisions of section 1123(b), namely they all concern the debtor.  Thus, the Supreme Court held that "bankruptcy courts may have many powers, including the power to address certain collective-action problems when they *implicate the debtor's rights and responsibilities*." *Id.* at 2084 (emphasis added).

55.     Here, the source of the authority to grant injunctive relief for the benefit of a nondebtor would arguably be section 1521(a)(7), a catchall provision similar to section 1123(b)(6).  Much like section 1123(b)(6), the catchall in section 1521(a)(7) follows a series of examples, all of which concern the **debtor**.  *Compare* 11 U.S.C. § 1123(b)(1)-(5) *to* 11 U.S.C. § 1521(a)(1)-(6).  Thus, applying the Supreme Court's rationale in *Purdue,* section 1521(a)(7) authorizes a court to grant to a foreign representative any additional relief that may be available to a trustee concerning

a debtor, and only a debtor.[8]  A foreign representative and/or debtor does not have the authority to import every benefit of the Bankruptcy Code to a Chapter 15 case under section 1521(a)(7).  At most, section 1521(a)(7) authorizes this Court to grant to a foreign representative relief available to a trustee concerning a debtor.

56.     As noted above, several courts have concluded that *Purdue* does not limit their ability to issue a preliminary injunction in favor of nondebtors under Chapter 11.  Those courts did not cite to any statute as the basis for their authority, but (despite the *Purdue* holding) relied on existing case law for that authority.  *See Parlement*, 2024 WL 3417084, *3 ("Courts have long recognized the authority of a bankruptcy court to grant a preliminary injunction staying claims against non-debtors."); *Coast to Coast,* 2024 WL 3454805, *1 (citing cases that pre-date *Purdue* in support of authority for granting an injunction).  Here, unlike the courts in those cases, the Foreign Representative has not cited to any such authority for granting relief in favor of a nondebtor in a ***Chapter 15 case*** under similar circumstances.

57.     The Foreign Representative relies on sections 362 and 105 of the Bankruptcy Code (by way of section 1521(a)(7)) as authority for a non-debtor stay.  *See* Verified Petition, at ¶ 102; Provisional Relief Motion, at ¶¶ 33, 38.  But, section 362 does not expressly authorize a trustee to obtain a stay of a non-debtor or his assets.  *See* 11 U.S.C. §§ 362(a) (imposing a stay of claims, enforcement activity, and other acts against the debtor and its property); *Kesar, Inc. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*, 405 B.R. 113, 126 (Bankr. D. Del. 2009) ("In general, only the debtor is afforded the protections of the automatic stay under section 362 of the Bankruptcy Code;

---

[8] To further its interpretation, in *Purdue*, the Supreme Court also analyzed whether the Bankruptcy Code authorizes a discharge of claims in other contexts. The Court emphasized that the Bankruptcy Code authorizes courts to enjoin claims against third parties without their consent "only in *one* context" involving asbestos-related bankruptcies, making it "all the more unlikely" that section 1123(b) grants courts the expansive authority urged by the plan proponents. *Id.* at 2085. Section 1301 of the Bankruptcy Code provides for a stay of actions against a codebtor. *See* 11 U.S.C. § 1301(a).  However, section 1301 is not applicable in Chapter 15 cases. *See* 11 U.S.C. § 103(j).

conversely, third-parties do not receive the protection of the automatic stay."). Moreover, courts, including the Supreme Court, have found that section 105 is not the basis for a nondebtor injunction. *See Purdue*, 144 S.Ct. at 2082 n. 2 (noting that "§105(a) alone cannot justify" nonconsensual third-party releases). Banco Modal is unaware of (and the Foreign Representative has not identified) any statutory or caselaw authority for extending the stay to Pope in a Chapter 15 case.[9]

58.     Based on the Supreme Court's reasoning in *Purdue*, Banco Modal submits that the Foreign Representative is not entitled to an order extending the protection of the automatic stay, a key benefit reserved for debtors, to Pope, in a Chapter 15 Case.

## C.     The Foreign Representative Has Failed to Satisfy the Standards for Granting an Injunction as to Pope, a Nondebtor

59.     Assuming *arguendo* that this Court may extend the automatic stay or grant other injunctive relief to a nondebtor under section 1521(a), the Foreign Representative must satisfy the substantial burden of proving the criteria for an injunction, which should only be granted in exceptional circumstances. *Parlement*, 2024 WL 3417084, at *5 (denying a request to stay actions against non-debtors). As explained below, the Foreign Representative has failed to carry his substantial burden in showing the exceptional circumstances needed for obtaining a non-debtor injunction.

60.     In order to obtain an injunction, the Foreign Representative must demonstrate that (1) there is a likelihood of success on the merits, (2) absent an injunction, there would be an

---

[9] Several courts have enforced a foreign court's stay of actions against a nondebtor. *See, e.g., In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010) (enforcing nondebtor release and injunction provisions under principles of comity). However, those cases are not applicable here as the Brazilian Court has not issued a stay of actions against Pope. *See infra*. Banco Modal is also aware that a court may enjoin actions against a nondebtor to preserve estate property where the action being stayed belongs to the foreign debtor's estate. *See In re Schimmelpenninck,* 183 F.3d 347 (5th Cir. 1999). Such cases are distinguishable where, as here, "we are not dealing with creditors attempting to recover on a debt under an alter ego and single business enterprise theory." *Vitro*, 701 F.3d 1059 n.30.

imminent irreparable harm to the Debtors' assets, (3) the balance of harm tips in favor of the foreign representative, and (4) that the public interest weights in favor of an injunction. *See* Verified Petition, at ¶¶ 102–103 (citing the four elements he must prove for an injunction); *see also* Provisional Relief Motion, at ¶ 44 (same).

61.    First, the Foreign Representative has failed to show that there is a likelihood of success on the merits.  Post–*Purdue*, success on the merits in the context of a request for an extension of the stay to a nondebtor would require this court to conclude that "(a) providing the debtor's management a breathing spell from the distraction of other litigation is necessary to permit the debtor to focus on the reorganization of its business or (b) …the parties may ultimately be able to negotiate that includes a consensual resolution of the claims against the non-debtors." *Parlement*, 2024 WL 3417084, at *1.  Because the Foreign Representative has not demonstrated either, he has not satisfied the first element for injunctive relief.

62.    In an effort to satisfy the first prong of the first element, the Foreign Representative has made baseless statements that the Debtors' restructuring efforts are somehow hindered because Pope is distracted by litigation in the U.S.  In his Declaration, the Foreign Representative stated that "[t]o date, I have observed how Pope has been absorbed by the U.S. Litigation, which has consumed time and efforts that, in my opinion, Pope could have devoted to his strategic and key activities as CEO of the Group…"  Rohr Decl., at ¶ 82.  ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ █ █████████████████

---

[10] ███████████████████████.

████████████████████████████████████████████████████████████

████████████████.[11]

63.      ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████.[12]   Indeed, despite the U.S. Litigation, upon

information and belief, the Debtors filed a restructuring plan (the "Plan") in Brazil last week in

accordance with the timeline set forth in the Verified Petition.  *See* Verified Petition ¶ 12 (noting

that the Debtors anticipated submitting their plan at the end of July 2024).  Thus, the evidence does

not show that the Debtors have been distracted by the U.S. Litigation.  Moreover, the Foreign

Representative has not provided any evidence regarding a potential consensual resolution, which

would satisfy the second prong of the first element.  For these reasons, the Foreign Representative

has failed to demonstrate the likelihood of success on the merits in this context.

64.      Second, the Foreign Representative has also failed to show that absent an injunction

as to Pope, there would be imminent irreparable harm to the Debtors or their assets.  Indeed, as

noted above, the Debtors have proposed a restructuring plan in Brazil despite Pope being the

subject of litigation in the U.S.  Thus, the lack of an injunction in favor of Pope has not hindered

the Debtors' restructuring.  Moreover, there is no evidence that it could.  As noted above, there is

no evidence that Pope is critical to the Debtors' restructuring such that his distraction could harm

the Debtors.  Moreover, the Debtors have minimal assets in the U.S. that could be attacked.  *See*

Rohr Decl., at ¶¶ 51-52 (describing a Franchise Agreement in connection with the opening of a

---

[11] ████████████████████████████.

[12] ████████████████████████████.

TGI Fridays restaurant in São Paulo, and an interest in the unearned portion of a cash retainer in Houston, as the Debtors' only U.S. assets).

65.     Taken together, the evidence before the Court is woefully insufficient to support a finding that the Debtors will suffer imminent irreparable harm if litigation against Pope is not stayed.  This is especially true as to Banco Modal's litigation against Pope, which has concluded.  As noted above, Banco Modal has a valid judgment against Pope.  If Pope is taken at his word, then there is nothing left for him to do.  He has no assets in the U.S. to protect, and certainly has no reason to be involved in any efforts by Banco Modal to enforce its judgment against nondebtor entities.  There is no reasonable basis to conclude that Banco Modal's future actions will distract Pope from performing his obligations to the Debtors.

66.     More importantly, Banco Modal's actions have not and will not affect or impair the Debtors' restructuring efforts.  Indeed, it appears that ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████.[13]  It certainly has not hindered the Debtors' ability to propose the Plan in Brazil.  Banco Modal is not proposing to take any actions against the Debtors or their minimal assets in the U.S., and in any event, is prohibited from doing so under the Recognition Order.  Thus, the Debtors would not be irreparably harmed if Banco Modal is allowed to proceed with enforcing its judgment against Pope and other nondebtors in the U.S.

67.     Third, the harm to parties in the U.S. outweighs any potential prejudice the Debtors may suffer.  If this Court issues a stay for the benefit of Pope, Banco Modal and other creditors of the Debtors will be enjoined from pursuing him in the U.S.  However, other parties, including

---

[13] ████████████████████████████.

creditors of Pope that do not have notice of these Chapter 15 Cases and/or the Brazilian Insolvency Proceeding, may pursue him outside the U.S. to the detriment of Banco Modal and other parties bound by this Court's stay.  Thus, a stay would prejudice the Debtors' U.S. creditors and no one else.  This Court should maintain a level playing field for all parties and not enjoin anyone from pursuing their remedies against Pope.  Moreover, it remains unclear as to how the Debtors would be prejudiced by Banco Modal's now concluded litigation against Pope given that their assets are protected by this Court's stay.  Tellingly, the Debtors have been proceeding with their restructuring efforts without Chapter 15 protection for months.  As noted above, they filed the Plan last week despite the State Court Action.  Banco Modal submits that it is not happenstance that the Debtors only requested Chapter 15 protection after the Texas State Court issued summary judgment against Pope.

68.     Finally, the public interest would be disserved by a stay in this instance for at least two reasons.  First a stay in a bankruptcy case should be extended to nondebtors only under extraordinary circumstances.  Here, the Foreign Representative has failed to show any such circumstance.  For example, there is no evidence, as there was in *Coast to Coast*, that Pope will fund the Plan or "play a vital role in the reorganization efforts."  *Coast to Coast*, 2024 WL 3454805 at *4.  There is no evidence that the State Court Action has or will disrupt the Debtors' reorganization efforts.  Further, the Foreign Representative has not provided any evidence that the Plan will be successful, or that, absent a stay of the State Court Action, the Debtors will not be able to advance their restructuring efforts.  *Id.*  In contrast, the evidence reflects that the Debtors proceeded with their restructuring efforts for over 8 months without Chapter 15 protection, and filed a Plan last week.  Yet, the Foreign Representative claims, without any factual support, that Pope's distraction prejudices the Debtors.  Finding that distraction alone would merit extension of

the stay to a nondebtor would open the floodgates and lead to insiders and employees of future debtors asking for the benefit of the automatic stay without incurring the obligations associated with a bankruptcy filing.  Such an absurd result would violate a fundamental principle of the Bankruptcy Code, namely that a debtor (and not a nondebtor) should get the benefit of the stay.

69.     Second, as discussed in greater detail below, granting a stay for the benefit of Pope would be inconsistent with comity, which is the underpinning of Chapter 15.  An insider should not be allowed to use Chapter 15 to get relief that he would have not obtained or would otherwise not be entitled to get in the foreign proceeding.

**D.     U.S. Creditors Would Not Be "Sufficiently Protected" if this Court Stays Actions Against Pope**

70.     A court may grant additional relief under section 1521(a) upon recognition only if "the interests of creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).  To make this assessment, courts employ a balancing test, weighing the relative harms and benefits to the parties in light of the circumstances presented.  *See In re Sanjel (USA) Inc.*, 2016 Bankr. LEXIS 2771, at *16 (Bankr. W.D. Tex. July 28, 2016) (collecting cases); *see also Vitro*, 701 F.3d at 1060, n.42 (discussing requirement under section 1522 to balance the interests of the creditors and debtors, and holding that enforcement of a plan that discharged non-debtor guarantors should be precluded for failing to provide the appropriate balance).

71.     A stay by this Court would enjoin parties from pursuing Pope and his assets in the U.S.  However, creditors in Brazil and elsewhere would remain free to take actions against him. Moreover, it is unclear whether Pope's creditors, other than those that are also creditors of the Debtors, would have notice of or be bound by this Court's extension of the automatic stay to Pope. Consequently, staying actions against Pope in the U.S. would prejudice U.S. creditors to the

advantage of parties outside the U.S.  Such a result would clearly violate section 1522(a).  Thus, the Court should not grant the additional relief requested by the Foreign Representative as to Pope.

### III.   An Extension of the Stay to Pope Would Violate Comity

72.     Under section 1507(a) of the Bankruptcy Code, a court may "provide additional assistance to a foreign representative under this title or other laws of the United States."  11 U.S.C. § 1507; see H.R. Rep. No. 109-31, pt. 1, at 109 (2005) (noting that  section 1507 authorizes "additional relief" beyond that available under section 1521 of the Bankruptcy Code).  Because "relief under § 1507 is in nature more extraordinary than that provided under § 1521," the Fifth Circuit has stated that "the test for granting that relief is more rigorous." *Vitro*, 701 F.3d at 1057 (internal citations omitted).  Further, "while § 1507's broad grant of assistance is intended to be a 'catchall,' it cannot be used to circumvent restrictions present in other parts of Chapter 15, nor to provide relief otherwise available under other provisions." *Id*. (citing *In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 626 n. 10 (Bankr. S.D.N.Y. 2010)).  Nor should section 1507 be used "to eviscerate limitations placed within chapter 15 itself." *Id*. (internal citations omitted).

73.     Although a court may issue an injunction for the benefit of a nondebtor under section 1507 as "additional assistance", *see Vitro*, 701 F.3d at 1063, section 1507(b) of the Bankruptcy Code requires the court to balance various factors in considering whether it may do so.  In particular, a court must "consider whether such additional assistance, consistent with the principles of comity, will reasonably assure:

(1)     just treatment of all holders of claims against or interests in the debtor's property;

(2)     protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3)     prevention of preferential or fraudulent dispositions of property of the debtor; [and]

(4)      distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title . . . ."

11 U.S.C. § 1507(b).  "These factors are the same as those set forth in former section 304(c)."  8 Collier on Bankruptcy ¶1507.02 (16th ed).   Congress elevated comity from a factor under § 304(c) to the introductory text of § 1507 "to make it clear that it is the central concept to be addressed."  *Vitro,* 701 F.3d at 1064 (citing H.R. Rep. No. 109-31, p. 1, at 109).

74.      "A central tenet of Chapter 15 is the importance of comity in cross-border insolvency proceedings."   *Vitro*, 701 F.3d at 1053 (citation omitted). Comity refers to the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protections of its laws."  *Id.* (quoting *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895)).  As the Fifth Circuit has held "comity is the rule under Chapter 15, not the exception."  *Vitro*, 701 F.3 at 1064.

75.      The Foreign Representative has acknowledged the Chapter 15 Cases are an ancillary proceeding.[14]  Consequently, it "is largely designed to complement and assist a foreign insolvency proceeding."  *Jaffé v. Samsung Elecs. Co.*, 737 F.3d 14, 24–25 (4th Cir. 2013); *In re JSC BTA Bank*, 434 B.R. 334, 340 (Bankr. S.D.N.Y. 2010) ("Section 1504 makes clear that any case commenced under chapter 15 is 'ancillary' to a foreign proceeding pending elsewhere."); *In re SPhinX, Ltd.*, 351 B.R. 103, 120 n.22 (Bankr. S.D.N.Y. 2006) ("[C]ases under chapter 15 are ancillary regardless whether the foreign proceeding is main or nonmain."); H.R. REP. NO. 109-31, pt. 1, at 106 (2005) ("Cases brought under chapter 15 are intended to be ancillary to cases

---

[14] *See* July 11, 2024 Hr. Tr. 20:19-20. A true and correct copy of the transcript for the July 11, 2024 hearing conducted before this Court is attached hereto as **Exhibit 5**.

brought in a debtor's home country, unless a full United States bankruptcy case is brought under another chapter.").

76.     During these Chapter 15 Cases, the Foreign Representative proclaimed the importance of these well-stablished principles in the context of opposing a creditor's motion to compel discovery from Pope.  Through counsel, the Foreign Representative argued to this Court that the discovery tools available to creditors in the U.S. are significantly broader than those in Brazil.  According to the Foreign Representative, to allow creditors in the Chapter 15 Cases to utilize "U.S. style discovery tools" unavailable to them in the Brazilian Insolvency Proceeding would be antithetical to the purpose of Chapter 15.[15]

77.     This same reasoning applies equally here.  The Foreign Representative's requested relief – the imposition of a stay to protect Pope, a nondebtor, and his assets – ███████████████ ██████████████████████.[16]  Indeed, a nondebtor stay is unavailable under Brazilian insolvency law.[17]  Moreover, U.S. courts have held that "absent exigent circumstances, a stay imposed pursuant to chapter 15 is normally coterminous with the stay in the corresponding foreign proceeding."  *In re Daewoo Logistics Corp.*, 461 B.R. 175, 178 (Bankr. S.D.N.Y. 2011) (rejecting argument that the stay the bankruptcy court granted in favor of the foreign debtor's U.S. assets had survived the expiration of the stay granted by the foreign court in the foreign proceeding).[18]

---

[15] *See* July 11, 2024 Hr. Tr. 28:1-23.

[16] ███████████████████.

[17] Upon information and belief, true and correct copies of an order of the Brazilian Court, dated January 23, 2024 (and a true and correct English translation of the order) denying a stay in favor of Pope, are attached to *Banco Votorantim S.A.'s Supplement to Limited Objection and Notice of Intent to Raise and Issue of Applicable Law* [Dkt. No. 88]. For ease of reference, Banco Modal has attached copies of the order (and the English translation) hereto as **Exhibit 6**.

[18] U.S. courts have acknowledged that the stay imposed under section 1520 of the Bankruptcy Code, which is automatic upon recognition, may be broader than what is available in the foreign jurisdiction.  *See In re JSC BTA Bank*, 434 B.R. 334, 346 (Bankr. S.D.N.Y. 2010) (noting that the Guide to Enactment of the Model Law, which a U.S. court may consider in analyzing issued under Chapter 15, provides that "it is justified to impose on the insolvent debtor the consequences of article 20 in the enacting State [i.e., the United States] ... even if the automatic effects of the insolvency proceeding in the country of origin are different from the effects of article 20 in the enacting State").  That

78.     To grant the Foreign Representative a stay as to Pope and his assets in the U.S. would yield an absurd result.  U.S. creditors of the Debtors would be enjoined from pursuing Pope or his assets in the U.S., while other parties (including creditors of Pope that are not involved in the Chapter 15 Cases) could freely exercise their rights against him.  Not only would such a result be absurd, it would yield inconsistent results in the U.S. and Brazil, thereby violating principles of comity and the ancillary nature of these Chapter 15 Cases.

79.     In addition, the Foreign Representative has failed to demonstrate that "consistent with principles of comity," a stay in favor of Pope will reasonably assure any of the factors set forth in section 1507(b).  On its face, such relief would prejudice U.S. creditors of the Debtors for the two reasons mentioned above.  First, non-U.S. creditors would remain free to pursue Pope in Brazil and elsewhere.  Second, creditors of Pope that are not also creditors of the Debtors may not be bound by an order of this Court extending the stay.  Thus, the relief requested would not assure just treatment of all holders of claims against or interests in the debtor's property, and for that reason should be denied.  Banco Modal respectfully submits that, consistent with principles of comity, Pope, as a nondebtor, cannot get relief under Chapter 15 beyond what is available to him in Brazil.

## RESERVATION OF RIGHTS

80.     Banco Modal reserves the right to amend or supplement this Supplemental Objection at any time prior to any hearing on the Foreign Representative's requested relief and to assert further arguments at the hearing. Banco Modal further reserves all rights, claims, defenses, and remedies, whether with respect to the requested relief, the Chapter 15 Cases, or otherwise.

---

result, however, is the automatic consequence of recognition under Chapter 15.  Banco Modal submits that a discretionary stay as requested here should not exceed what is otherwise available in the foreign court under principles of comity.

## CONCLUSION

81.     Banco Modal respectfully requests that the Court deny the Foreign Representative's

request for post-recognition relief solely respect an extension of the stay to Pope and any assets he

owns in his individual capacity. Banco Modal further requests that the Court grant such further

relief, at law or equity, that is just and proper.

Dated:  July 29, 2024
      Dallas, Texas

                                Respectfully submitted,

                                **NORTON ROSE FULBRIGHT US LLP**

                                By: */s/ Toby L. Gerber*                .
                                Toby L. Gerber (SBT 07813700)
                                Jason I. Blanchard (SBT 24130197)
                                2200 Ross Avenue, Suite 3600
                                Dallas, Texas 75201
                                Telephone: (214) 855-8000
                                Facsimile: (214) 855-8200
                                Email: toby.gerber@nortonrosefulbright.com
                                      jason.blanchard@nortonrosefulbright.com

                                -and-

                                Francisco Vazquez (admitted *pro hac vice* )
                                1301 Avenue of the Americas
                                New York, NY 10019-6022
                                Telephone: (212) 318-3000
                                Facsimile: (212) 318-3400
                                Email: Francisco.vazquez@nortonrosefulbright.com

                                *Counsel for Banco Modal S.A.*

## CERTIFICATE OF SERVICE

I certify that on July 29, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

By:     */s/ Jason I. Blanchard*
        Jason I. Blanchard