IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Case No. 24-90398 (CML) |
| SouthRock Capital Ltda., *et al.*[1] | § § § | Chapter 15 |
| Debtors in Foreign Proceeding. | § § § § | (Jointly Administered) |

**RESPONSE TO OBJECTOR' SUPPLEMENTAL BRIEFING**

Fabio David Rohr ("Rohr"), in his capacity as Foreign Representative (the "Foreign Representative" or the "Petitioner") of the above-captioned Debtors hereby files this Omnibus Response to *The Ativos Funds' Supplemental Brief In Support Of Limited Objection To Emergency Motion Of Foreign Representative* (the "Ativos Supplemental Brief") (ECF No. 89) filed by Ativos Especiais II - Fundo de Investimento em Direitos Creditórios - NP and Ativos Especiais III - Fundo de Investimento em Direitos Creditórios – NP (the "Ativos Funds").[2] In support of the Response, the Foreign Representative respectfully states as follows:

**INTRODUCTION**

1. The Ativos Funds' Supplemental Brief represents a last-ditch effort to distract the Court from the issues of this case: 1) whether Mr. Pope's statements regarding his lack of United States assets is true; and 2) whether the Ativos Funds' litigation will distract Pope and impinge on

---

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's Brazilian tax identification number, are as follows: (a) SouthRock Capital Ltda. (01-35); (b) Americana Franquia S.A. (01-51); (c) Brazil Airport Restaurantes S.A. (01-73); (d) HB Participações S.A. (01-57); (e) SRC 5 Participações Ltda. (01-02); (f) SRC 6 Participações Ltda. (01-41); (g) SRC Holding Participações S.A.(01-74); (h) SR N Participações S.A. (01-01); (i) Star Participações S.A. (01-09); (j) Starbucks Brasil Comércio de Cafés Ltda. (01-00); (k) SW do Brasil Ltda. (01-20); (l) SW Stores do Brasil Ltda. (01-36); and (m) Wahalla Ltda. (01-10). The Debtors' mailing and service address is Avenida Paulista, 1294, 14º andar, sala 14, Bela Vista, São Paulo/SP, CEP 01310-915, Brazil.

[2] Capitalized terms included in the Introduction are defined in the following sections of the Opposition.

13013-00001/15116898.2

the Debtor's ability to successfully reorganize. *See* July 11 Hr'g Tr. 44:14-20. After exceeding the bounds of the limited discovery authorized by this Court, the Ativos Funds have found no evidence contradicting Mr. Pope's statements regarding his lack of substantial assets in the United States. However, they persist in their attempts to gain leverage over the Debtors' restructuring in Brazil, with futile litigation against the Debtors' CEO in the United States. A stay of the U.S. Litigation while the approval of the Debtors' reorganization plan is pending would cause no harm to the Ativos Funds—indeed, none of them has been able to substantiate the harm potentially incurred, except for boilerplate and mouth yawning assertions contained in their Objection Briefs.

2.  The Ativos Funds' Brief contains obviously incorrect legal conclusions and blatant distortions of the facts. The Foreign Representative has made clear that they seek a temporary stay of the Ativos Funds' litigation against Mr. Pope until the Debtors confirm a reorganization plan. In this proceeding, the Court granted the Ativos Funds limited discovery to test the Mr. Pope and Foreign Representative's claims and assess whether Mr. Pope truthfully represented that he has no assets in the United States. The Ativos Funds have taken full advantage of this discovery, serving Mr. Pope with numerous interrogatories and document requests that preview their future actions absent a stay. However, Ativos Funds' supplemental brief does not address the questions posed by the court. It instead engages in a flawed analysis of irrelevant caselaw and alludes to foreign assets that have no basis in reality.

## BACKGROUND

### *The Brazilian Insolvency Proceeding*

3.  On October 31, 2023, Debtor SouthRock Capital Ltda., along with other 21 affiliates (collectively, "Southrock"), filed a petition with Brazilian Bankruptcy Court to initiate the Brazilian Insolvency Proceeding.

4. On December 12, 2023, the Brazilian Bankruptcy Court entered the 2023 Acceptance Order, commencing the Brazilian Insolvency Proceeding. The entry of the 2023 Acceptance Order has entailed a stay of the several enforcement proceedings that creditors commenced in Brazil against the 2023 RJ Debtors for pre-2023 Petition debt.

5. On March 11, 2024, the 2024 RJ Debtors also filed their 2024 Petition with the Brazilian Bankruptcy Court.

6. On April 30, 2024, the Brazilian Bankruptcy Court entered the 2024 Acceptance Order, staying enforcement proceedings against the 2024 RJ Debtors for pre-2024 Petition debt.

7. On May 10, 2024, Brazilian Bankruptcy Court ordered the substantial consolidation between the Debtors. In the Brazilian Insolvency Proceeding, the current Brazilian Stay Deadline is October 27, 2024.

8. On 024, the Debtors filed their consolidated plan of reorganization.

9. The Debtors expect that their general creditors meeting will take place starting from and the Brazilian Court will sanction the Debtors' consolidated reorganization plan in or around September 2024.

### *The Chapter 15 Proceeding*

10. On June 12, 2024, the Foreign Representative commenced this chapter 15 proceeding (the "Chapter 15 Proceeding") by (i) seeking the U.S. recognition of the Brazilian Insolvency Proceeding (ECF No. 1); and simultaneously (2) filing an emergency motion for provisional relief pending recognition (ECF No. 10). As stated in the Foreign Representative's verified petition (the "Verified Petition, ECF No. 9), the Foreign Representative initiated the Chapter 15 Proceeding to (i) extend the effects of the Brazilian Insolvency Proceeding to the United States; (ii) maximize the value of the Debtors' assets in the Brazilian Insolvency

Proceeding and allow for an orderly and effective debt-restructuring in Brazil; and (iii) protect the Debtors from any ongoing adverse action of various creditors. Verified Petition ¶¶ 2, 14. Through the Provisional Relief Motion, the Foreign Representative sought a temporary stay with respect to the Debtors, Mr. Pope, and their U.S. property (the "Provisional Relief") to (i) provide the Debtors with a breathing space; and (ii) avoid unnecessary interference with the Brazilian Insolvency Proceeding by creditors, including the Ativos Funds. Provisional Relief Motion ¶¶ 23–24, 27.

11. On July 13 and 14, 2024, the Ativos Fund objected to the Provisional Relief with respect to an extension of the stay to Mr.. Pope (the "Contested Matter"). *See* ECF Nos. 16, 17, 18, and 24.

12. On July 14 day, the Court held a hearing and granted the Provisional Relief limited to the Debtors. *See* ECF No. 38 ¶ 2. Also, the Court (i) set the hearing on the U.S. recognition of the Brazilian Insolvency Proceeding for July 15, 2024 ("July 15 Hearing"); (ii) adjourned the Contested Matter to the July 15 Hearing; and (iii) authorized the creditors to conduct limited discovery in relation to the Contested Matter.[3]

13. On June 20, 2024, the Ativos Funds served 10 requests for production to the Debtors (the "RFPs to Debtors"). In response to the RFPs to Debtors, on July 4, 2024, the Foreign Representative produced documents totaling 12,382 pages. *See* ECF No. 54. In addition, for the alleged purpose of obtaining discovery for the Contested Matter, the Ativos Funds served (i) nine interrogatories to Mr. Pope; (ii) 17 requests for production to Mr. Pope; and (iii) third-party subpoenas to 18 entities. *See* ECF Nos. 40, 45, 73, and 75.

14. On July 9, 2024, the Ativos Funds deposed the Foreign Representative.

---

[3] On June 21, 2024, the Court entered the related order. *See* ECF No. 38.

15. On July 15, 2024, the Court granted the U.S. recognition of the Brazilian Insolvency Proceeding, authorizing the Foreign Representative to "conduct the examination of witnesses, the taking of evidence, or the delivery of information concerning the Debtors' assets, affairs, rights, obligations, or liabilities." *See* ECF No. 69 ¶ 9.

16. On July 30, 2024, the Ativos Funds deposed Mr. Pope. On the same day, they filed their Supplemental Briefs to further oppose to an extension of the stay to Mr. Pope.

## ARGUMENT

### I. THE DEBTORS REQUESTED RELIEF WILL FACILITATE A SUCCESSFUL REORGANIZATION WITH NO HARM TO THE ATIVOS FUNDS

17. Many courts hold that the automatic stay may be extended to non-debtor parties to facilitate the successful reorganization of the Debtor. *In re Parlement Techs., Inc*., 2024 WL 3417084, at *3 (Bankr. D. Del. July 15, 2024). The distraction of key actors in the restructuring process can prove detrimental to the process and that local actions should be enjoined if they interfere with the debtor's restructuring efforts. *See, e.g., In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) ("[I]rreparable harm is present when the failure to enjoin local actions will disrupt the orderly reconciliation of claims and the fair distribution of assets").

18. The Ativos litigation harms SouthRock as it decreases Mr. Pope's time and attention to the Brazilian Insolvency Proceeding. To date, Mr. Pope continues to play a key role in SouthRock's reorganization: in addition to ensuring the daily operations of the Debtors' 160 stores while the restructuring is pending, Mr. Pope negotiates the sales of the Debtors' assets, negotiates new DIP financing for the business, and negotiates company contracts, among other things. Rohr Depo. 25:12-15, 21-25; 89:21-24. As the Foreign Representative witnessed, the U.S. Litigation interferes with Mr. Pope's activities as the Debtors' CEO, including by causing him to miss meetings and preventing him from participation in negotiations with creditors. Rohr Depo.

126: 7. As a result, some milestones in the process progressed slower than necessary. Rohr Depo. 144: 13-16. Mr. Pope's absence during the restructuring process directly contrasts with his typical engagement in the daily affairs of the company. Rohr Depo. 144:18-22. With great effort, the Debtors managed to propose their plan of reorganization— however, this key stage of the restructuring process, the Debtors cannot risk Mr. Pope's distractions derailing the restructuring process and causing irreparable harm Southrock and its thousands of employees.

19. To prevent this harm to the Debtors, the Foreign Representative requests a temporary stay of the U.S. litigation against Mr. Pope, which, if any, will only minimally affect the Ativos Funds' rights against Mr. Pope. From the beginning of this case, the Foreign Representative has proposed a stay "pending approval of a reorganization plan." *See* Joint Verified Petition (ECF No. 9).[4] The Foreign Representative anticipates that the Brazilian Bankruptcy Court will sanction the Debtors' reorganization plan in or around September 2024. *See* ECF No. 6 at 21; ECF No. 7 at 6. This short delay in the U.S. litigation will not disadvantage the Ativos Funds to any significant degree.

## II. THE ATIVOS FUNDS' ACTIONS IN THIS CASE HIGHLIGHT THE NEED TO EXTEND THE STAY TO MR. POPE

20. For the purposes of this case, Mr. Pope has already spent multiple hours and days preparing complying with the Ativos Funds' extensive discovery demands. In the past two months, they have pursued broad discovery against Mr. Pope and the Debtors, including depositions of both Mr. Pope and the Foreign Representative, comprehensive document requests to both Mr. Pope and the Debtors, interrogatories to Mr. Pope, and *eighteen* third-party subpoenas.

---

[4] In the Emergency Motion of Foreign Representative for Provisional Relief (ECF. No. 10), the Foreign Representative requested a stay for Mr. Pope and the Debtors "pending recognition of Brazilian Insolvency Proceeding." *See* Ativos Funds Supplemental Brief at 8. This request obviously applies to the provisional relief requested in that motion.

21. Despite these efforts, the Ativos Funds found zero evidence to contradict Mr. Pope's representation that he lacks assets in the United States. The Ativos Funds appear to concede that point, as their Supplemental Brief does not even attempt to challenge the claims in Mr. Pope's Declaration. As noted in their Motion to Partially Withdraw, the extension of the stay to Mr. Pope only created a discovery free for all. In sum, to date, Pope obtained no benefit from the temporary standstill because the creditors conducted extensive "post-judgment" discovery under the guise of checking Mr. Pope's Declaration. The only benefit to the RJ Proceeding consists of proving that the creditors' allegations that Mr. Pope has assets in the U.S. lacked any factual merit or basis. To be clear, despite a month and a half of discovery, the creditors uncovered no evidence of significant assets owned by Mr. Pope in the U.S. The only evidence that the Court has before it is the Pope Declaration, sworn testimony and hundreds of pages of bank account information, partial tax returns (signed) showing little to no funds or assets in the U.S.

22. In sum, the Ativos Funds now admit that, after extensive and far-reaching discovery, they found no evidence that Pope has any substantial assets in the United States. Undaunted, the Ativos Funds now posit a falsehood to cover up their ill-fated campaign. The Ativos Funds claim that "discovery" has revealed that "Pope may have considerable assets outside the United States." Ativos Objection at 9. However, the Ativos Funds do not reference a single piece of evidence to substantiate this claim, nor can they.[5] The Ativos Funds' reliance on bad faith and bald falsehoods makes clear that they intend to continue harassing litigation not because they seek assets (which they now know do not exist), but because they seek punishment and consummate distraction from the Brazilian Bankruptcy Proceeding and their own illegal conduct

---

[5] In a July 30, 2024 email, Counsel for the Foreign Representative requested the Ativos Funds provide evidence for this statement. The Ativos Funds did not respond. This lack of evidence flies in the face of the Ativos Funds' mandate to ensure that "factual contentions have evidentiary support." See Fed. R. Civ. P. 11(b)(3); Fed. R. Bankr. P. 9011.

in seizing more than $2.4 million in accounts receivable and refusing to account for the funds despite orders from the Brazilian Bankruptcy Court.

### III. PURDUE'S HOLDING DOES NOT FORECLOSE EXTENDING THE STAY TO POPE

23. Section 1521(a) empowers a court to "grant any appropriate relief" at the request of the foreign representative when necessary to "effectuate the purpose of [Chapter 15] and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a). Numerous cases uphold bankruptcy courts' discretion to enjoin actions against non-debtors to the benefit of the Debtors' estate. *See In re Philadelphia Newspapers LLC*, 410 B.R. 404, 412 (Bankr. E.D. Pa. 2009), *aff'd sub nom. In re Philadelphia Newspapers, LLC*, 423 B.R. 98 (E.D. Pa. 2010) **("**The law is clear that in some circumstances discretionary stays, beyond the scope of section 362, are appropriate and that a court's power to issue such injunctions stems from section 105 of the Code"). In deciding whether to grant a stay, courts consider "whether the litigation could interfere with the reorganization of the debtor…or diminish the debtor's ability to formulate a plan of reorganization." *In re W.R. Grace & Co.*, 115 F. App'x 565, 570 (3d Cir. 2004) (internal citations omitted).

24. The Ativos Funds spend the bulk of their brief indulging in pure sophistry hoping to sidestep the extensive caselaw supporting the Foreign Representative's requested relief by naively suggesting that *Harrington v. Purdue Pharma L. P.* could extend to the temporary stay extensioin here. On its face, *Purdue*, addressing whether to uphold a *permanent* discharge of third-party claims contrary to section 524(e) of the Bankruptcy Code, bears zero relationship to the question of a *temporary* stay in litigation to facilitate the negotiation and confirmation of its restructuring plan. *See Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071, 2074 (2024) ("Confining ourselves to the question presented, the Court holds only that the Bankruptcy Code

does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants."). At least one court has **already** clarified that Purdue does not foreclose a bankruptcy court's discretion to extend a stay of litigation non-debtors, but merely clarifies how courts should evaluate the "success on the merits" prong of the stay analysis. *In re Parlement Techs., Inc.*, 2024 WL 3417084, at *3 (Bankr. D. Del. July 15, 2024). "Following *Purdue Pharma*, a preliminary injunction may still be granted if the Court concludes that (a) providing the debtor's management a breathing spell from the distraction of other litigation is necessary to permit the debtor to focus on the reorganization of its business or (b) because it believes the parties may ultimately be able to negotiate a plan that includes a consensual resolution of the claims against the non-debtors." *Id.* The Foreign Representative seeks a stay for exactly these reasons—to successfully confirm SouthRock's plan of reorganization through ongoing negotiations with creditors that are at their apex.

## CONCLUSION

25. The Ativos Funds rely on false statements of fact and bizarre legal reasoning to excuse their continued harassment of Mr. Pope in an effort to distract from their own illegal actions in the Brazilian Insolvency Proceeding where they diverted at least $2.4 million of property of the estate to an illegal fund, Lend Tech. For the reasons set forth above, the Foreign Representative respectfully requests that this Court denies Ativos' Motion to Quash in its entirety and grant such other further relief as this Court deems appropriate.

Respectfully submitted this 31st day of July 2024.

                                                         **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

                                                         */s/ Patricia B. Tomasco*

Patricia B. Tomasco
SBN 01797600
Joanna D. Caytas
SBN 24127230
Razmig Izakelian *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone:  713-221-7000
Facsimile:  713-221-7100
Email: pattytomasco@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com

**COUNSEL FOR FABIO D. ROHR, FOREIGN REPRESENTATIVE**